And you don't have to wear your mask at the podium. If I could, Your Honor, my wife was seriously ill recently, so... It's your option. I'm just taking extra precaution. If it please the Court, and I'll attempt to speak up. If it please the Court, Frank Weiser on behalf of the appellants, and I'd like to reserve five minutes' time for rebuttal. I'd like to address the Fourth Amendment issue first and the standing question that was raised both at the district court and the appellee's brief. I don't see how this is significantly different in any way from Patel. Different from what? Patel, the Patel v. City of Los Angeles case. And I'm specifically concentrating now on the standing issue. We have a record-keeping requirement under this ordinance, as it was in Patel. Patel was a facial challenge. It was not an as-applied challenge. But the allegations in this complaint, similar to Patel, is that the apartment owner association members and the hotel association members are subject to the ordinance. That's at the excerpt of the record, page 37, at paragraphs 15 through 18 in the First Amendment complaint. And they are presently subject to the ordinance. This is not, I believe, what you would call a pre-enforcement challenge, where the ordinance is not yet in effect as to the particular members challenging it. These members are actually subject to the ordinance being pled, and they have the record-keeping requirement. But yours is not a facial challenge. Is that an as-applied challenge because they are subject to the ordinance? No. The argument is that when you are presently subject to the ordinance, that you can still make a challenge not based on any particular facts as applied to you. That's what a facial challenge is. That's what Patel held. The Supreme Court held, as the Court knows in Patel, that it is not categorically barred anymore. It is not particularly disfavored. I believe in all three stages or two stages in this Court, and I believe, Judge Beyer, you were on the panel in Patel at the three-judge panel stage that I argued before the Court, there was no question about standing. It was never doubted at any stage in these proceedings, not at three-judge panel, not at en banc review, and not before the Supreme Court. So I believe standing is clearly proper and they can proceed. How did you argue standing before the district court? Pardon me? How did you argue standing before the district court? Before the circuit court? No, the district court in this case. In this case? Yes. I think it was submitted, the argument was submitted, and I believe I just had talked about the merits. I don't think you talked about standing before the district court, did you? But that's not a waivable. I think a yes or no answer would be helpful. So you would agree that you did not raise that with the district court? That's correct. And your argument here is that you did not raise it with the district court? It's de novo review and it's not waivable. And it can be raised, I believe, as a standing issue. It can be raised at any time, even on appeal. So I don't believe it's waivable. It's a jurisdictional issue. Turning to the merits, and I believe Patel still applies, the reasonable expectation of privacy issue. This is different. I argued the Hotoffer City of San Jose case. And in that case, there was also a disclosure requirement of records that the apartment owners had to disclose. But in that case, Judge Watford, who wrote the majority opinion, indicated that there were other portions of that ordinance that were not being challenged, in which I believe there had to be rent increases under the rent control portion of the ordinance. And because those were not being challenged and those had to be disclosed to the government, there was a waiver and that was not considered to be a reasonable expectation of privacy. The Hotoff case also cited a case by Judge Tallman, I think a year earlier, Apartment Owners Association versus City, County, and San Francisco. And in that case, because the apartment owners had put their information on a website that was accessible to the public, there was no reasonable expectation of privacy. But what we have here is we have records that are not contracts and receipts that are required to be given upon demand, which are not on websites. These are not disclosed directly to the government. These are third-party contracts, third-party receipts. The government is saying we have a right to look at those upon demand. I just don't see how there is not a reasonable expectation of privacy, especially my concern here is this ordinance says any municipal authority can ask for the records. It's not limited to the particular ones who are enforcing this ordinance. It could be the police. It could be financial, the financial portion of the city. So there could be a myriad of situations where these records could be used for things other than the enforcement of the ordinance. I think that's a classic Fourth Amendment issue in terms of protecting your rights against potential prosecution. I want to say very briefly, and I know this was a hot issue in the Hotoff case, and it caused a lot of – and I had argued, and I still argue, that the property-based portion of the Fourth Amendment under Saldell, U.S. v. Jones, Florida v. Jardine is distinct from the reasonable expectation of privacy. I know Judge Watford said that he need not decide the issue of whether a compelled production of records is a search because he said there was no reasonable expectation of privacy. We're arguing, of course, there is one. But in the property-based test, the Lavon case that I cited for City of Los Angeles, where homeless belongings were being taken off the street and seized, was very clear, and all circuits agree, that if you have possession of property, that has nothing to do with reasonable expectation of privacy. Those are two distinct tests. The Jones case, where they put the tracking device on a car that was traveling through public streets, there was no reasonable expectation of privacy. And it was very clear, because it was a property-based test that was being discussed, you don't look to the reasonable expectation of privacy. But that being the case that Judge Watford had argued that it was somehow intertwined, our argument is there is a reasonable expectation of privacy anyway. And so the property-based test still applies. My argument is that very simply, both the Patel-Omban court recognized, and there's longstanding U.S. Supreme Court authority, Boyd v. U.S., Hale v. Hankel, going back to the late 19th century, early 20th century, a compelled production of records can be a search. And the government can't just go on a fishing expedition. There has to be some form of review by a court. As to the reasonableness of the search, if, in fact, there is a reasonable expectation of privacy, if, in fact, there is a search in these record production ordinances, Patel says it's per se unreasonable if you don't allow pre-compliance review. I didn't get the last word you said. It's per se unreasonable if there is no pre-compliance review. So Patel was a facial challenge. It was found that it was unreasonable per se because the ordinance did not allow for pre-compliance review. So I don't think you get into a factual, once again, it's a facial challenge. You don't get into a factual discussion of the reasonableness of the particular search. I want to then turn very quickly to the takings case. There was a case that this circuit decided on February 1st, 2022, this year, Ballinger v. City of Oakland. It was brought by Pacific Legal Foundation. It was a tenant relocation fee challenge where the apartment owners had to pay fees for tenant relocation. There was an argument that it was a taking under the Fifth Amendment. The circuit rejected it, and in particular, the argument was it was agreed that monies can be considered to be a taking, and that's what we're arguing here. We're not arguing, as I think the district court argued, that this was an issue of the property value, the apartments or the hotels themselves necessarily losing value, but that under the Horn v. Department of Agriculture case and other cases, the monies themselves can be considered a taking, whether it's per se taking or whether it's a regulatory taking under the Penn Central test, but it can be a taking. The Ballinger case said that, no, if you don't have a specific discrete money that you're talking about, like the government taking money out of a trust account, it's not a taking. But they condition that on the fact that there's no benefit in the tenant relocation ordinance. The government is not giving any benefit to the apartment owner, therefore there had to have been some taking of a specific discrete amount of money. If there is a benefit or a permit involved, then you could have a taking claim on a generalized requirement under an ordinance to pay fees, to pay monies, and that's what we have here, I believe. If you're talking about where the government is compelling the apartment owners and hotel owners to pay fees to these collectors, trash collectors, and in some sense conditioning their right to operate based upon them complying with the ordinance. So I think this is distinct from Ballinger, and Ballinger doesn't apply in this particular case. Turning to the regulatory issue under Penn Central, I don't see how the court could, with all due respect to the court, but I don't see how the district court could have made a decision on a 12B6 motion. Penn Central is very clear, those are ad hoc factual inquiries. It's a multi-factor test, and it said that the reasonable expectation of investment was that this court in the Colony Culver City Carson case, I believe, said that a 75% decrease in your property value is not necessarily a taking. But we've alleged, I believe in the First Amendment complaint, this is a 200% increase in fees. The owners are really suffering, and the issue of whether the ordinance is reasonable or what their expectation of investment was is a factual issue. Did these owners have these apartments before the ordinance was adopted, or was it after the ordinance was adopted? If they bought their apartments after the ordinance was adopted, I agree. There's no reasonable expectation of investment. They buy it subject to the ordinance. But if they bought it before the ordinance was adopted and they had the understanding that they could contract with private contractors on their own, then I think that becomes a factual issue, whether in fact that's a reasonable or not a reasonable investment expectation. The character of the ordinance is such that I think that that's open to debate because the government is forcing the owners to enter into these contracts. And whether that, in fact, is reasonable or not, I think, once again, is an intensely factual issue. You've got to about two and a half minutes. Do you want to reserve? Oh, so I appreciate it. Thank you. Thank you. Good morning. May it please the Court. I think we've heard from Mr. Weiser several reasons why the district court properly dismissed his client's claims. Why don't you raise your microphone up just a little? Either one. Thank you. Better? Yes. Okay. Thank you. First, the issue of Patel, this recurring issue of Patel. My friend said that he didn't think that any of the courts in Patel had anything to say about standing, which means Patel doesn't stand for anything to do with standing. The reason they didn't speak to standing in that case is because the injury to his clients in Patel was stipulated. The ordinance had actually been enforced against them. There's no allegation that that's happened here. It's merely that his clients are subject to the ordinance, but that's in the same sense that everyone in the city is subject to everything in the municipal code. To allow them to challenge this, especially facially, just because they think that there's some instance in which it could be enforced unconstitutionally, is basically to allow them to be roving avengers of the Constitution for things that have nothing to do with them or may not necessarily have anything to do with them. If they don't produce the invoice, right? Yes. They're subject to either a $1,000 fine or six months in county jail. That's true under Section 11M of the municipal code. Section 11? Yes. So why isn't that an imminent threat of injury to them? I think that's to show, allege more to show, that they would be imminently injured. So under this court's Lopez v. Cannadale case, which is a First Amendment case where you would be more solicitous of the risk of their injury, you find no risk or no standing without an allegation that enforcement is imminent against them and that they're in a position where they might flout the ordinance. So it's not just that the ordinance exists. If we affirm without prejudice, he can go back and make an allegation that the Section 11 of the municipal code is serious and there is an imminent threat and start all over again. If the court affirmed and directed the district court to amend its judgment so that it was without prejudice on the Fourth Amendment ground, yes, someone could have standing, one of his clients could have standing, if it was enforced against them, the ordinance was enforced against them. And all he has to do is to use the adjective imminent. I think it would require more than the adjective. You need to allege some facts to show that it was likely to be enforced against them imminently. So we'd have to get some inspector from L.A. County or L.A. City to say, if I knew this was happening, I would go and bring an action against them. I'm not even sure you necessarily need to show that. Maybe just a factual allegation that this is actually being enforced regularly against anyone. I think the reality of the facts on the ground in this case, and I don't want to say that this ordinance is a vesicle appendage of some prior enforcement regime, but especially as to multifamily and commercial building owners, the fact is that the franchise agreements with the franchisees require them to give over the kind of information the city might get from a receipt anyway. So it's pretty unlikely, I think, that my friend is going to find someone who's had this ordinance enforced against them or be able to allege consistently with Rule 11 and his clients. I'm not following you. Would you repeat what you just said? Yes, I'm sorry. This ordinance, it's not exactly a vesicle remains of some previous enforcement regime. But as to multifamily and commercial building owners, which is who my friend represents, the city has another way to get this information. So it's pretty unlikely, I think, that he's going to find someone who is at imminent risk of having this enforced against them. This is sort of like a jaywalking ordinance that is not enforced. I'm not willing to concede that it's not enforced, but against someone in a commercial multifamily building, the city can get this information from the franchisee who provides the service to that building. And in fact, they regularly do. I believe it's every evening or maybe it's weekly. Those franchisees update the city with their customer base, basically, automatically. So this is information that's, it's an ordinance hanging out there. I suppose if you wanted to show up in court and say, I want to make a Fourth Amendment argument about something, it's a decent one to pick, but find someone who's had it enforced against them or is likely to have it enforced against them first. If you could find such a person, I think, then you get to the question of whether there's reasonable expectation of privacy in a document like this. I think the answer is going to be no, because, as I said, the franchise agreement with the service provider already requires that information to be divulged to the city. So there's a third-party exception to any expectation of privacy someone could have in the receipt to begin with. This really then turns on the question of whether asking for a document is a trespass to the property of the document. I think that's an issue that the court was wrestling with a bit in HOTOP. You can see it between the per curiam opinion and Judge Bennett's concurrence. It was not a dissent. But I don't think it's one that needs to be sorted out in a case where, again, there's no standing to bring the Fourth Amendment claim. I'll turn next to the takings claim, as my friend did. I don't see how you could say there's a taking of money here. Again, as you conceded, ordinarily that's in a case where there's a discrete sum of money rather than fungible money that's taken. Nor could I see how there would be a regulatory taking here if there had been no allegations as to the property. It's only a question of how much the cost to do this business has increased, not how much the value of the property has diminished. It's not enough to say, well, that's a fact issue, so we get to go past the pleadings. You actually have to plead the facts. And perhaps my friend could do that if he had sought leave to amend either in the district court or here. But he hasn't. It's an issue that's forfeited. Is the real challenge here to the – is what's really at stake here the franchise agreement makes them pay more? It seems to be that that's really the underlying problem. You represent the city of Los Angeles? That's correct. Are there direct challenges to this ordinance on some theory that it infringes on competition or something like that? I believe there is presently a state court challenge to this case that's on appeal in the state courts. I'm not sure the details of that challenge. I know that case went to summary judgment before it was resolved and appealed, so I think there's more meat on the bones there, as it were. There's not much, I think, to be made of this case. I didn't hear any argument as to the due process or equal protection theories that were in the opening brief. I believe the equal protection theory in particular is frivolous on its face. Frankly, I'm hard-pressed to see how this court reverses the district court's judgment here. But I would say that the city's position is that the best outcome would be a published opinion or order disapproving the way in which this appeal was conducted and prosecuted. As our brief laid out, this is the same appeal copied and pasted over and over again, both between the district court papers and appellate briefs. This court's rules prohibit that kind of litigation. It is expensive to the city and to the other municipalities against which it's been undertaken, and I think it should be disapproved. So unless the court has other questions, I'm prepared to submit on the briefs. Thank you, counsel. Thank you. Lawyer Rappelle. Just very briefly, as to the Fourth Amendment issue on standing, if my learned colleague is correct, then it seems to me Patel and facial challenges go by the wayside. The Patel case was significant at the Supreme Court level, not simply because this LA Municipal Code Ordinance 4149 was invalidated. It set law. There had been a long, long debate for many years by scholars about the contours of a facial challenge and whether they're disfavored. And the Supreme Court laid the rule down with at least Fourth Amendment challenges that they're not disfavored. They're not categorically disbarred. They are allowed. But in Patel, I think you would agree in Patel that they had stipulated that there was injury in fact. And if that's the case, my argument would be to that that that would be developed in the district court. Well, yes, but you haven't alleged any injury in fact in this case. That's true. Well, I have alleged certain facts that I think a reasonable inference is, is that once again, they're subject to the ordinance. The stipulation in the Patel case was that they were subject to the ordinance. They were subject to the recordkeeping requirement. Right, except that they stipulated there's no standing issue in Patel because they stipulated there was injury in fact. But I pled those facts in the First Amendment complaint. I pled at page 37 of the action of record, the paragraphs 15 to 18, that they are subject to the ordinance. They're subject to the ordinance, and therefore, they're automatically allowed to make a facial or as applied challenge. I mean, that's your argument, right? I believe so. With the threat of criminal prosecution, I mean. But you have to show more. If you're making a pre-enforcement argument, you have to show more than just it's possible. Well, I suppose that's where I differ respectfully whether in fact you should consider this a pre-enforcement challenge. Well, it is, isn't it? Well, it is and it isn't. I mean, if they haven't been enforced, otherwise you'd have some issue. There may not be facts as to any particular individual as to a particular search of their records. But once again, there is an allegation that all the plaintiffs are or appellants are presently subject to the ordinance and the record-keeping requirement. To that effect, I would indicate, Your Honor, I did cite in my brief quite differently from what I had in the district court brief. Were there any facts that there was any threat made by any municipal employee that there would be a penalty or an imprisonment as a result? There was no allegation in the complaint to that effect. But I would say that with respect to facial challenges, Justice Scalia, there had been a great deal of debate, and I know this because obviously I was involved in the case, about whether you could make a facial challenge under the Fourth Amendment and the reasonableness requirement under the amendment somehow precluded it under at least dicta and U.S. Supreme Court authority. But the dissent, Justice Scalia wrote the dissent, and he indicated that while he felt that the ordinance was perfectly fine, he felt that motels were closely regulated. He went out with the way he made very clear that the facial challenge go forward, and he said it's not the label you put on it. It's whether we, and I cited it in my opening brief, whether in fact there had been any facts or no facts brought before the court. The question is what the remedy is and whether, if it's a facial challenge, you're attempting to knock out the whole portion of the ordinance that you're saying you're subject to, if it's an as-applied challenge, it's only as applied to the facts in your particular case. And I think that's what we had in Patel. That's what we have here. So I would respectfully submit we, I think, clearly have standing because the ordinance is already being enforced. They are subject to the ordinance. That's not in your pleadings. Pardon me? That's not in your pleadings. Oh. It's not in your pleadings that you have an alleged actual enforcement. Well, not the actual enforcement of an actual search. Right. But actual enforcement of the record-keeping requirement under the ordinance. In other words, that is being enforced. They have to keep the records as they did in Patel, which is then subject to potentially the government asking for it. Our questions have taken you over your time, so thank you for your argument. Okay. Your time has expired. Okay. Thank you. Thank you. Case just argued will be submitted for decision. And we'll proceed to argument in San Luis Obispo v. Santa Maria Valley.
judges: SCHROEDER, THOMAS, BEA